```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF OKLAHOMA

CATHY D. BOSWELL,                  )
                                   )
            Plaintiff,             )
                                   )
v.                                 )   Case No. CIV-22-292-JAR
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
            Defendant.             )
```

**OPINION AND ORDER**

Plaintiff Cathy D. Boswell (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is ordered that the Commissioner's decision be **REVERSED** and the case **REMANDED** for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 60 years old at the time of the ALJ's decision. Claimant obtained a GED. Claimant worked in the past as an office manager. Claimant alleges an inability to work beginning March 20, 2020 due to limitations resulting from degenerative discv

3

disease, anxiety, depression, insomnia, diabetes, neuropathy in both legs, heart disease, and muscular degeneration.

## Procedural History

On August 20, 2020, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On January 6, 2022, Administrative Law Judge ("ALJ") Pearline Hardy conducted an administrative hearing by telephone due to the extraordinary circumstances posed by the COVID-19 pandemic.  On January 19, 2022, the ALJ issued an unfavorable decision.  On August 10, 2022, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation.  She determined that, while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform a range of light work.

## Error Alleged for Review

Claimant asserts the ALJ erred in (1) improperly rejecting

4

the opinion of Claimant's treating physician; and (2) failing to find that Claimant's vision limitations would preclude her from performing her past relevant work.

## Evaluation of Medical Opinion Evidence

In her decision, the ALJ determined Claimant suffered from the severe impairments of coronary artery disease, status post-coronary artery bypass grafts; type 2 diabetes mellitus with neuropathy and retinopathy; macular edema; chronic pain syndrome; degenerative disc disease of the lumbar spine; and obesity. (Tr. 17). The ALJ found none of Claimant's conditions met a listing. (Tr. 19). As a result of the limitations caused by her severe impairments, Claimant was found to retain the residual functional capacity to perform a range of light work. Id. In so doing, the ALJ determined that Claimant could lift up to 20 pounds occasionally and ten pounds frequently, could stand and walk with normal breaks for about six hours in an eight hour workday with the option to sit for ten minutes after every one hour of standing as long as she is not off task or away from the workstation and could sit with normal breaks for about six hours in an eight hour workday. Claimant could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, and could occasionally

5

stoop, kneel, crouch, and crawl. Claimant could occasionally push/pull with the bilateral lower extremities and could occasionally bilaterally operate foot controls. She could not work at unprotected heights or around dangerous machinery and could have occasional exposure to extreme cold, extreme heat, humidity, and vibration. Claimant could have no work with small objects (e.g. smaller than a half-dollar) and no requirement to read small print (e.g. smaller than 12-point font). Claimant required a job that would permit her to be off-task ten percent of the time during an eight hour workday due to symptoms of pain and medication side effects, and that would permit her to be absent from work one day per month, including late arrivals and leaving early on a consistent basis. (Tr. 19-20).

After consultation with a vocational expert, the ALJ determined that Claimant could perform her past relevant work as an office manager. (Tr. 28). Consequently, the ALJ found that Claimant had not been under a disability from March 20, 2020 through the date of the decision. Id.

Claimant first contends the ALJ improperly rejected the opinion of Dr. Valerie Pack, Claimant's treating physician. Dr. Pack authored an Attending Physician's Statement dated October 27,

2020.  Dr. Pack diagnosed Claimant with retina hemorrhages, chronic pain, degenerative disc disease of the lumbar spine, diabetes, diabetic neuropathy, and coronary artery disease. Current treatment included pain medication and relaxation skills. Dr. Pack indicated Claimant was "disabled for any occupation" beginning March 20, 2020.  Claimant was not released to return to work.  Dr. Pack indicated Claimant had a "severe limitation of functional capacity; incapable of minimum sedentary activity" for a period "greater than 12 months."  Dr. Pack wrote in a narrative statement that "pt. unable to sit or stand for long periods of time, cannot maintain attention or concentration."  She did not expect any improvement in functional status.  (Tr. 717).

Dr. Pack completed a second Attending Physician's Statement on March 16, 2021.  She added to the treatment section, indicating that Claimant was currently treated with pain medication, diabetic medication (weekly and daily injections), high dose Aflibercept for the retina issues, and relaxation skills.  The remainder of the statement mirrors the prior statement.  (Tr. 718).

On September 14, 2021, Dr. Jeremy Ross completed am Attending Physician's Statement on Claimant's condition after Dr. Pack apparently moved.  He stated Claimant was being treated with pain

7

medication and relaxation skills.  The remainder of the statement mirrors the prior two statements.  (Tr. 719).

The ALJ rejected all three statements on the basis that the opinions reflected in the statements were not supported by the treating physicians' treatment records.  Dr. Pack's treatment notes of April 7, 2020 indicate that Claimant experienced left leg weakness with decreased range of motion, abnormal spine with loss of lumbar lordosis and tenderness, abnormal head/neck with decreased range of motion and paraspinal muscle tightness. Claimant complained of burning, aching, throbbing pain with increased activity making it worse.  She stated that it limited her ambulation and interfered with her daily life.  She was prescribed pain medication.  (Tr. 497-99).

Notes from a May 7, 2020 visit shows the pain and findings continued.  Clamant complained of pain in her lower back and sometimes her left leg with numbness in her feet.  Medications were helping with the pain.  (Tr. 502-03).

In a July 9, 2020 visit, Claimant stated she fell and experienced a new weakness in her left leg.  Dr. Pack noted decreased range of motion bilaterally in the lower extremities. Pain medication continued to help.  (Tr. 492-93).

8

On August 4, 2020, Claimant reported that the medication was not working long enough and she was having more pain. (Tr. 481). Her medications made her feel bad. The diagnoses of abnormal findings in the spine and lower extremities continued with decreased range of motion. (Tr. 482).

In a September 29, 2020 visit, Claimant reported new pain in her groin and buttocks. The abnormal findings were again noted in her spine and legs with decreased range of motion. (Tr. 489).

In an October 27, 2020 visit, Claimant's pain, tenderness, and decreased range of motion continued. She needed assistance walking for stability. Her numbness down both legs and feet were noted with worsening groin pain. (Tr. 485-87, 501).

Similar findings were made by Talisha Nichols, APRN employed by the Social Security Administration to examine Claimant. Range of motion studies indicated several areas of decreased mobility. (Tr. 517-20). Claimant was noted to have lumbar spinal pain with paraesthesia, left hip pain with decreased mobility, fatigue, and decreased endurance. (Tr. 516).

Because Claimant filed her claim after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised

9

regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors

10

were considered.  Id.  However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]"  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004); *see also* Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability").

The ALJ found that the medical records of Dr. Pack and Dr. Ross did not support their findings in the Attending Physician's Statement.  Though they do not track word-for-word and holding the statements on work-related disability aside, the findings of

11

limitation in the medical records largely mirror the findings in the statements. Moreover, the limited medical record from other physicians do not diminish the consistency of the findings. The ALJ must re-examine her findings on supportability and consistency and expressly state the evidence in the medical record which run contrary to the opinions in the statements.

Claimant also contends her limitations in her vision would preclude her from using a computer which is a necessary function of her past relevant work as an office manager. While the ALJ limited Claimant to viewing items larger than a half-dollar, this Court is somewhat confused how this limitation can be projected onto a computer, which would seem to be a required instrument in Claimant's past occupation. On remand, the ALJ shall explore this limitation with a vocational expert.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** to Defendant for further

proceedings.

 IT IS SO ORDERED this 30th day of March, 2024.

             _____
             JASON A. ROBERTSON
             UNITED STATES MAGISTRATE JUDGE